# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### EUGENE DIVISION


**JAMES O. ROBINSON,**

         Plaintiff,                       Case No. 6:12-cv-01032-ST

      v.                               **OPINION AND ORDER**

**CAROLYN L. COLVIN,[1]**
Commissioner of Social Security,

         Defendant.


**STEWART, Magistrate Judge:**

Plaintiff, James Robinson ("Robinson"), seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. This Court has jurisdiction under 42 USC § 405(g) and § 1383(c), and the parties have consented to adjudication by a Magistrate Judge. Because

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to FRCP 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as defendant in this case.

the Commissioner's decision is not supported by substantial evidence, the decision is reversed
and remanded for an award of benefits.

## ADMINISTRATIVE HISTORY

Robinson filed applications for DIB and SSI on January 21, 2010, alleging disability as of
January 1, 2007 due to learning disorders and depression.  Tr. 173-84.[2]  After his applications
were denied initially and upon reconsideration, Robinson requested a hearing. Tr. 117-21, 131-
37.  After holding an administrative hearing on January 26, 2011, Administrative Law Judge
("ALJ") Rudolph Murgo found Robinson not to be disabled.  Tr. 11-27.  The Appeals Council
denied Robinson's subsequent request for review on April 12, 2012, making the ALJ's decision
the final Agency decision. Tr. 1-4.  Robinson now seeks judicial review of that decision.

## BACKGROUND

Born in 1974, Robinson was 37 years old at the time of the hearing.  Tr. 46.  He
completed school through the ninth grade while receiving special education services. Tr. 47, 268.
He has past work experience as a fish packer, tree trimmer helper, logging chaser, pizza baker,
and  landscape laborer.  Tr. 65-66, 219-25.  Robinson alleges that he is unable to work due to
depression and learning disabilities.  Tr. 211.

## DISABILITY ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment which can be expected to result in death
or which has lasted or can be expected to last for a continuous period of not less than 12
months[.]"  42 USC § 423(d)(1)(A).  The ALJ engages in a five-step sequential inquiry to
determine whether a claimant is disabled within the meaning of the Act.  20 CFR §§ 404.1520,
416.920; *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999).

---

[2]  Citations are to the page(s) indicated in the official transcript of the record filed on November 28, 2012 (docket #14).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If so, the claimant is not disabled. 20 CFR §§ 404.1520(a)(4)(i) & (b), 416.920(a)(4)(i) & (b).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12-month durational requirement. 20 CFR §§ 404.1520(a)(4)(ii) & (c), 416.909, 416.920(a)(4)(ii) & (c). Absent a severe impairment, the claimant is not disabled. *Id*.

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations. 20 CFR §§ 404.1520(a)(4)(iii) & (d), 416.920(a)(4)(iii) & (d); 20 CFR Pt. 404, Subpt. P, App. 1 (Listing of Impairments). If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite the limitations imposed by his or her impairments. 20 CFR §§ 404.1520(e), 416.920(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the ALJ uses the RFC to determine if the claimant can perform past relevant work. 20 CFR §§ 404.1520(a)(4)(iv) & (e), 416.920(a)(4)(iv) & (e). If the claimant cannot perform past relevant work, then at step five, the ALJ must determine if the claimant can perform other work in the national economy. *Bowen v. Yuckert*, 482 US 137, 142 (1987); *Tackett*, 180 F3d at 1099; 20 CFR §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v) & (g).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F3d at 1098. If the process reaches step five, the burden shifts to the Commissioner to show that jobs

exist in the national economy within the claimant's RFC.  *Id*.  If the Commissioner meets this

burden, then the claimant is not disabled.  20 CFR §§ 404.1520(a)(4)(v) & (g), 416.920(a)(4)(v)

& (g), 416.960(c).

## ALJ'S FINDINGS

At step one, the ALJ found that Robinson had not engaged in substantial gainful activity

after the alleged onset date of January 1, 2007.  Tr. 16.  At step two, the ALJ found that

Robinson's borderline intellectual functioning and affective disorder are severe impairments.

Tr. 17.  At step three, the ALJ found that Robinson has no impairment or combination of

impairments that meet or medically equal a listed impairment.  *Id*.

The ALJ next assessed Robinson's RFC and determined that he can perform work at all

exertional levels, but has the non-exertional limitations of "simple, one to two step tasks," "no

production/pace work," and "only occasional public contact."  Tr. 18.  At step four, the ALJ

found Robinson can perform his past relevant work as a tree trimmer helper.  Tr. 21.

Alternatively at step five based on the testimony of a vocational expert ("VE"), the ALJ

determined that Robinson also can perform jobs that exist in significant numbers in the national

economy, including as a sweeper and commercial cleaner.  Tr. 23.  Therefore, the ALJ concluded

that Robinson is not disabled.  *Id*.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper

legal standards and the findings are supported by substantial evidence in the record.  42 USC

§ 405(g); *Lewis v. Astrue*, 498 F3d 909, 911 (9th Cir 2007).  This court must weigh the evidence

that supports and detracts from the ALJ's conclusion.  *Lingenfelter v. Astrue*, 504 F3d 1028,

1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998).  The reviewing

court may not substitute its judgment for that of the Commissioner.  *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F3d 1194, 1205 (9th Cir 2008), citing *Parra v. Astrue*, 481 F3d 742, 746 (9th Cir 2007); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001).  Where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "'supported by inferences reasonably drawn from the record.'"  *Tommasetti v. Astrue*, 533 F3d 1035, 1038 (9th Cir 2008), *quoting Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004); *see also Lingenfelter*, 504 F3d at 1035.

## DISCUSSION

Robinson does not dispute his physical ability to perform work, but contends that, contrary to the ALJ's findings, he lacks the concentration, persistence or pace to remain on task and work at an appropriate speed for competitive employment.  In particular, he argues that the ALJ erred by: (1) improperly rejecting the opinion of an examining psychologist; (2) failing to adequately consider the lay testimony; and (3)  improperly rejecting his subjective symptom testimony.  This court agrees with Robinson that the ALJ erred and orders remand for an immediate calculation and award of benefits.

## I. Examining Psychologist's Opinion

### A. Legal Standard

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions.  *Carmickle v. Comm'r*, 533 F3d 1155, 1164 (9th Cir 2008).  The Ninth Circuit distinguishes between the opinions of treating, examining, and non-examining physicians.  The opinion of a treating physician is generally accorded greater weight than the opinion of an examining physician, and the opinion of an examining physician is accorded greater weight than the opinion of a non-examining physician.  *Lester v. Chater*, 81 F3d 821, 830

(9th Cir 1995).  An uncontradicted treating physician's opinion can be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F2d 1391, 1396 (9th Cir 1991).  In contrast, if the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F3d at 830.

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti*, 533 F3d at 1040.  An ALJ may also discount a medical source's opinion that is inconsistent with the source's other findings.  *Bayliss v. Barnhart*, 427 F3d 1211, 1216 (9th Cir 2005).

### B.  Dr. Wahl's Opinion

After examining and testing Robinson at the request of the agency on March 25, 2010, Dr. Wahl noted that his thought processes were "logical, coherent and responsive although mildly limited by poor verbal skills."  Tr. 268.  He found that Robinson displayed good grooming and hygiene and found no signs of clinical depression, anxiety, or a thought disorder. *Id.*  Dr. Wahl assessed Robinson's Verbal IQ at 72, Performance IQ at 76, and Full-scale IQ at 72, "placing him in the Borderline range of intellectual functioning at the 3rd percentile." *Id.*  He further noted that Robinson "was especially slow on tasks of psychomotor speed, earning a Processing Speed index of just 69," such that "it is unlikely that he could perform even simple repetitive manual tasks at a pace necessary for competitive employment."  *Id.*  He diagnosed Robinson with adjustment disorder with depressed mood and borderline intellectual functioning, and assessed a Global Assessment Functioning ("GAF") score of 55.  Tr. 268-69.  Dr. Wahl

concluded that Robinson's low IQ and Processing Speed Index of 69 "suggests that he would not be able to perform even simple repetitive manual tasks at an adequate pace," but "could get along well enough with coworkers and supervisors on most jobs." *Id*. He considered Robinson's cognitive impairments as permanent and rendering him incapable of managing his own funds. *Id*.

### C. <u>Analysis</u>

The ALJ assigned only "some weight" to Dr. Wahl's opinion and instead assigned "great weight" to the opinion of Bill Hennings, Ph.D., a non-examining psychologist. On March 26, 2010, after reviewing Dr. Wahl's opinion, Dr. Hennings opined that Robinson "does appear to perform these 'pencil-paper' tasks slowly but did persist through the exam and has [a history] of work activities that suggests he is capable" of gainful employment. Tr. 272. Because Dr. Hennings' assessment of Robinson's functional capacity contradicted Dr. Wahl's opinion, the ALJ was required to give specific, legitimate reasons for rejecting Dr. Wahl's opinion. As his reasons for doing so, the ALJ explained that Dr. Hennings "had the opportunity to review treatment records from several medical sources [and] his opinion is supported by [Robinson's] activities of daily living and the medical record as a whole." Tr. 21.

Contrary to the ALJ's statement, nothing in the record indicates the Dr. Hennings reviewed any "treatment records from several medical sources." He stated only that he "[r]eviewed Dr. Wahl's consultative opinion" and mentioned no other records. Tr. 272. Moreover, Dr. Hennings issued his opinion only one day after Dr. Wahl issued his opinion, making it unlikely that Dr. Hennings had any more medical records at his disposal than Dr. Wahl. In fact, Dr. Wahl's evaluation and test results are the only significant medical documents in the record.

Inconsistency with a claimant's activities of daily living is a specific, legitimate reason for rejecting a medical source's controverted opinion. *Tommasetti*, 533 F3d at 1040. In that regard, the ALJ noted that "the jobs [Robinson] is currently performing suggest he is not as limited as [Dr. Wahl] opines," namely "currently mowing lawns for pay and performing labor chores in exchange for rent." Tr. 21. However, that work does not conflict with Dr. Wahl's opinion since it allows him great flexibility. As Robinson testified at the hearing, he was not given a specific time to finish the work that needed to be done and could go in the next day to finish. Tr. 61. He had no pace requirements to meet in those jobs. Thus, that work corresponds with Dr. Wahl's opinion that Robinson cannot work at a pace necessary for competitive employment.

Elsewhere in his opinion, the ALJ cited other abilities as contrary to Dr. Wahl's findings, namely that Robinson "is able to use a computer and navigate the internet, can pay bills, count change, and is able to follow both spoken and written instructions." Tr. 19. As discussed below, that characterization disregards the lay evidence and is inaccurate. Moreover, even if accurate, it does not conflict with Robinson's low processing speed.

The ALJ also noted that Dr. Wahl assessed Robinson's GAF as 55 which indicates, at most, that Robinson experiences only moderate occupational functional difficulties. Tr. 21. As Robinson concedes, one would expect a lower GAF score in light of Dr. Wahl's test findings. However, it is not Robinson's overall functioning that impacts his ability to work. Instead, the relevant consideration is his very low processing speed as revealed by the test result which the Commissioner does not contest and which Dr. Hennings did not address.

Thus, the ALJ erred by failing to provide specific, legitimate reasons to assign diminished weight to Dr. Wahl's opinion.

## II.  Lay Testimony

### A.  Legal Standard

The ALJ must consider lay witness testimony, and must provide "germane reasons" when rejecting such testimony.  20 CFR  404.1513(d); *Molina v. Astrue*, 674 F3d 1104, 1114 (9th Cir 2012).  The ALJ, however, is not required to address each witness "on an individualized witness-by-witness basis" and may reject lay testimony predicated upon reports of a claimant properly found not credible.  *Id*.

### B.  Mr. Inman's Testimony

Russell Inman, Robinson's stepfather, completed a Third Party Function Report based on observing Robinson 20-30 hours per week.  Tr. 236.  He stated that Robinson is easily distracted, needs reminders to attend to personal hygiene "all the time" and to take his medication "most of the time." Tr. 237-38.  Although he pay bills "most of the time" and can count change, he has no bank accounts, and his mother usually writes checks and pays his bills. Tr. 239.  He added that Robinson cannot budget his money and "spends money till gone or is taken advantage of by other people."  *Id.*

Mr. Inman observed that Robinson has difficulty with memory, completing tasks, concentration, understanding, following instructions, getting along with others, and comprehending what people say or mean.  Tr. 241.  Although Robinson is "fairly good" at following spoken and written instructions, he does not handle stress well.  Tr. 241-42.

### C.  Analysis

The ALJ did not mention lay evidence or Mr. Inman by name, but twice cited his report (Exhibit 7E).  At step three, the ALJ cited Exhibit 7E to support his statement that Robinson "watches TV and is able to use a computer to navigate the internet" (Tr. 17) and to reject

Dr. Wahl's opinion because Robinson can "use a computer and navigate the internet, can pay bills, count change, and is able to follow both spoken and written instructions." Tr. 17, 19. These citations of Mr. Inman's report are incomplete.

By citing Mr. Inman's report for Robinson's ability to pay bills and count change, the ALJ inferred that Robinson can independently handle his own finances. To the contrary, Mr. Inman wrote that Robinson has no bank accounts, relies on his mother to write checks and make sure his bills are paid, and cannot budget his money. Tr. 239. The ALJ correctly noted Mr. Inman's report that Robinson can "count change," but Dr. Wahl noted that Robinson was not able to subtract 14 from 50 or $7.50 from $18.00, suggesting some limitation in this area. Tr. 268. Therefore, the ALJ mischaracterized Mr. Inman's report to overstate Robinson's financial ability.

Although Mr. Inman did state that Robinson could follow spoken and written instructions, he qualified this statement by adding "most of the time" and also by noting that Robinson has difficulty connecting with other people and comprehending what they say or mean at times. Tr. 241. Again, the ALJ mischaracterized Mr. Inman's report.

As to Robinson's ability to "use a computer to navigate the internet," the record does not disclose whether Robinson does so competently or simply plays games.

Mr. Inman's testimony was both significant and probative and lends support to Dr. Wahl's opinion that Robinson cannot work at a pace necessary for competitive employment. The ALJ erred in disregarding those portions of Mr. Inman's report that support Robinson's claim without giving germane reasons for doing so.

///

///

Page 10 – OPINION AND ORDER

### III. <u>Robinson's Credibility</u>

#### A. <u>Legal Standard</u>

The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F3d 586, 591 (9th Cir 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F3d at 1036. Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id*, quoting *Smolen v. Chater*, 80 F3d 1273, 1281 (9th Cir 1996). The ALJ's overall credibility determination may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *Batson*, 359 F3d at 1197.

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities and work record and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F3d at 1284; *see* SSR 96–7p, *available at* 1996 WL 374186 (July 2, 1996). Further, an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F3d at 1284.

///

///

B. **Robinson's Testimony**

On February 12, 2010, Robinson completed a Work History Report with the assistance of his mother that lists five jobs:  clean-up maintenance (his current part-time job), fish packer, pizza maker and dishwasher for a pizza parlor, clean-up helper for a tree service, and chaser for "woods-logging." Tr. 219-26.  However, the report does not list the dates or duration for any of those jobs.  He also reported that he "lost or got fired from most" of his jobs due to "emotional [and] mental issues." Tr. 219.

At the hearing, Robinson described his previous work experience as a cook and dishwasher at a pizza parlor for about a year which he lost due to "some disagreements" with his employer. Tr. 52; *see* Tr. 267 ("about 2 months").   He also testified that he currently worked in exchange for rent by performing odd jobs around his property, such as mowing lawns, for about 16 hours per month and for the last four years has done the same type of lawn maintenance work for South Coast Shopper for about 10 hours on the weekends. Tr. 50-51; *see* Tr. 267 (latter job for "about the last 9 or 10 years").  In those jobs, he was not given a specific time to finish the work that needed to be done. Tr. 61.  He estimated that he could possibly work full-time mowing lawns, if that work were available. Tr. 54.

Robinson testified that he takes Zoloft for depression, but could not afford it now that he is no longer on the Oregon Health Plan. Tr. 54.  He had not taken Zoloft for about three years. *Id*.  He stated sometimes feeling very depressed and at times suicidal. Tr. 62.

In addition, Robinson testified that he gives his money to his mother who pays his bills for him. Tr. 60.  He had to have his mother help him complete the forms for Social Security because he was unable to understand the paperwork. *Id*.  He could read the forms, but was not capable of understanding what they meant. *Id*.

C.  **Analysis**

The ALJ did not find Robinson's "allegation that he is incapable of all work activity credible." Tr. 18.  Due to the absence of any evidence of malingering, the ALJ was required to provide clear and convincing reasons to reject Robinson's testimony.

As reasons, the ALJ first found that Robinson "is able to use a computer and navigate the internet, can pay bills, count change, and is able to follow both spoken and written instructions." Tr. 19.  As discussed above, the ALJ obtained this information primarily from Mr. Inman's report which he mischaracterized.  Mr. Inman stated that Robinson cannot budget his money, that his mother helps him pay his bills, and that Robinson had difficulty connecting with other people and comprehending what they say or mean at times.  Tr. 241.  Although Robinson does use a computer, the extent of his computer use is unknown.

Next, the ALJ stated that Robinson was able to control his affective mood disorder with Zoloft, but had not taken it in over three years.  Tr. 20.  However, Robinson testified that he had stopped taking Zoloft because he was unable to afford it.  Tr. 54.  Not surprisingly for someone with difficulty understanding forms, Robinson had let his Oregon Health Plan lapse.  Tr. 49.  He reapplied, but was rejected.  *Id*.  It is error for the ALJ to discredit a claimant for not obtaining treatment he cannot afford.  *Orn v. Astrue*, 495 F3d 625, 638 (9th Cir 2007).

As another reason to doubt Robinson's credibility, the ALJ noted that Robinson was not receiving any psychological treatment for his mental condition.  Tr. 20.  It is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.  *Nguyen v. Chater*, 100 F3d 1462, 1465 (9th Cir 1996).  More importantly, Dr. Wahl considered Robinson's cognitive impairments to be permanent and did not recommend any treatment. Tr. 269.

The ALJ further stated that Robinson's "daily activities are quite involved," as he "is able to cook on a BBQ, perform chores in exchange for rent, mow lawns for pay," and in 2008 was "spending a lot of time working in the woods," demonstrating that he "is capable of performing rigorous physical activities." Tr. 20. It is undisputed that Robinson's physical condition is not an impediment to his ability to work. The issue is whether he can perform at a competitive pace. The record reveals that he performs that work at his own pace which the ALJ overlooked. Tr. 61. As Mr. Inman noted, Robinson "starts things going then gets distracted" and "needs to be nudged some times." Tr. 238.

The ALJ also found Robinson's credibility undermined by his lack of a gainful work history which "shows that he has not put forth a good faith effort to support himself financially." Tr. 20. However, Robinson claimed that he lost his jobs due to his "emotional [and] mental issues." Tr. 219. The gaps in his work record are entirely consistent with Dr. Wahl's finding that he cannot even perform simple repetitive manual tasks at a pace necessary for competitive employment. Tr. 268.

Finally, the ALJ found that Robinson's criminal history of a 1995 statutory rape conviction, which occurred more than 20 years ago, and a 2007 conviction for failing to register as a sex offender, "reflects unfavorably on his credibility." Tr. 20. The ALJ fails to explain how this criminal history shows a lack of honesty, particularly in light of his very low intelligence. As Dr. Wahl found, Robinson has only a borderline appreciation for common societal rules and values. Tr. 268.

Thus, the ALJ erred by failing to give clear and convincing reasons to reject Robinson's testimony.

///

## IV. <u>Remand</u>

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F3d, 1172, 1178 (9th Cir), *cert. denied*, 531 US 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F3d 1135, 1138-39 (9th Cir 2011), quoting *Benecke v. Barnhart*, 379 F3d 587, 593 (9th Cir 2004). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id*. The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F3d 871, 876 (9th Cir 2003), citing *Bunnell v. Sullivan*, 947 F2d 341, 348 (9th Cir 1991). The reviewing court declines to credit testimony when outstanding issues" remain. *Luna v. Astrue,* 623 F3d 1032, 1035 (9th Cir 2010).

As discussed above, the ALJ erred by rejecting Dr. Wahl's opinion, failing to properly consider Mr. Inman's evidence, and failing to give clear and convincing reasons to reject Robinson's testimony. Thus, that evidence should be credited as true. *See Harman*, 211 F3d at

1179; *Smolen*, 80 F3d at 1281-83; *Varney v. Sec'y of Health & Human Servs.*, 859 F2d, 1396, 1398 (9th Cir 1988).

Turning to the other two facets of the *Harman* inquiry, this court finds no outstanding issues that must be resolved before a determination of disability can be made, and the record is clear that the ALJ would be required to find Robinson disabled if the evidence is credited.

At step four, the ALJ found that Robinson retains the ability to perform his past work as a tree trimmer helper. Tr. 21. The issue is whether the record supports that conclusion when crediting Dr. Wahl's opinion that Robinson is unable to perform work at a pace necessary for competitive employment.

At the hearing, the ALJ asked the VE whether a person of Robinson's age, education and work experience with no exertional limitations, but limited to simple, one/two-step tasks, could perform any of Robinson's past work. Tr. 66. The VE responded that he could perform work as a tree trimmer helper which is the only past work with a reasoning level of 1. Tr. 66-67. The ALJ then added the limitation of "no pace" work. Tr. 68. In response, the VE explained that he did not "see the tree trimmer helper as being production work as in . . . an electronic assembler's production," but "there is a pace still" with the speed "determined by the employer." Tr. 68. Therefore, "in terms of how [the VE understood] production work," he confirmed that Robinson could still be a tree trimmer helper with a "no production limitation." Tr. 69. Robinson's attorney changed the hypothetical to a person who, using Dr. Wahl's words, "would not be able to perform even simple, repetitive tasks at a pace necessary for competitive employment." Tr. 70. In response, the VE stated that the person would be "relegated to a sheltered workshop." Tr. 71. When asked to clarify what pace would preclude a person from performing competitive

employer, he answered that the "pace is determined by the employer, but beyond that, there's no precise definition." *Id.*

In essence, the VE testified that if Robinson had worked as a tree trimmer helper at the pace determined by his employer, then he performed that past work at a pace necessary for competitive employment. However, the record does not reveal how Robinson performed that work and whether, as with his current employment, he was able to work at his own pace. He may have lost that job because he could not keep up the pace determined by his employer, because it was only seasonal, or because of his criminal history. As Robinson explained to Dr. Wahl, his job at the pizza parlor ended because "people were calling up my boss and complaining that I was working there because of my past." Tr. 267. However, the record is silent as to why he lost his job as a tree trimmer helper. Although the earnings report is in the record, it is unclear as to when he performed that work and how much he earned. Tr. 189-93. Although the ALJ stated that Robinson's earnings at this job "met the substantial gainful activity requirements," he gave no specifics. Tr. 22. This contrasts with his earlier finding that Robinson had a work history with earnings below the SGA, evidencing a lack of motivation to support himself financially. Tr. 20.

In sum, the pace at which Robinson performed his past work as tree trimmer helper is not disclosed by the record. Thus, the VE's conclusion that Robinson could still be a tree trimmer helper with a "no production limitation" is not supported by the record. If his employer allowed him to perform that work at his own pace, as he performs his current work, then it could hardly be characterized as competitive employment.

Even if Robinson cannot perform his past work as a tree trimmer helper, the ALJ also found at step five that he could perform other jobs existing in the national economy as identified

by the VE.  However, the hypothetical answered by the VE did not include the ALJ's own finding that Robinson has moderate limitations in concentration, persistence or pace.  Tr. 17. The hypothetical included a limitation to unskilled, simple work which does not incorporate limitations in concentration, persistence and pace.  *See Winschel v. Comm'r of Soc. Sec.*, 631 F3d 1176, 1179 (11th Cir 2011); *Ramirez v. Barnhart*, 372 F3d 546, 554 (3rd Cir 2004); *Stewart v. Astrue*, 561 F3d 679, 684-85 (7th Cir 2009) (per curiam).  As explained by Judge Marsh when adopting the position of *Brink v. Comm'r of Soc. Sec. Admin.*, 343 Fed Appx 211, 2009 WL 2512514 at *1 (9th Cir. 2009) (unpublished):  "The question with regard to this limitation [of simple, routine work] is not whether plaintiff can understand instructions, but whether she has the mental capacity to stay on task such that employment is available." *Amanti v. Comm'r*, Civil No. 6:11-cv-06378-MA, 2012 WL 5879530, at *7 (D Or Nov 19, 2012).  Similarly, the question here is not only whether Robinson has the intelligence to perform a job with an SVP of 1, but whether he has the concentration, persistence or pace to remain on task and to work at an appropriate speed.

    In addition, the hypothetical did not address Dr. Wahl's finding that Robinson's Verbal Comprehension score was at the 4th percentile.  Tr. 270.  The tree trimmer helper job and the three alternate jobs identified by the VE require verbal aptitude skills above the bottom 10% percent of the population.  Dictionary of Occupational Titles 408.667-010, 389.683-010, 381.687-014, 323.687-014.

    In sum, crediting Dr. Wahl's opinion, Mr. Inman's observations, and Robinson's testimony, the evidence is insufficient to support the Commissioner's decision, and no useful purpose would be served by further administrative proceedings.  According to the VE, a person who "would not be able to perform even simple, repetitive tasks at a pace necessary for

competitive employment," as opined by Dr. Wahl, would be "relegated to a sheltered workshop."

Tr. 70-71.  Thus, a remand for an award of benefits is appropriate.

## ORDER

For the reasons discussed above, the Commissioner's decision is REVERSED AND

REMANDED pursuant to Sentence Four of 42 USC § 405(g) for an award of benefits.

DATED this 23rd day of July, 2013.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge